AO 91 (Rev. 08/09) Criminal Complaint

FILED by _____ D.C.

AUG 1 2 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - WPB

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

United States of America )
v. )
RUSSELL HENDERSON MARSHALL and ) Case No. 14-8342-DLB
UNIVERSAL INDUSTRIES LIMITED, INC )
)
)
_____ )
Defendant(s)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  November 19, 2012 to the present  in the county of  PALM BEACH  in the
SOUTHERN  District of  FLORIDA , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 50, United States Code, Sections 1702 and 1705 Export Administration Regulations (EAR), Title 15, Code of Federal Regulations, Sections 736.2 and 764.2, | RUSSELL HENDERSON MARSHALL, and UNIVERSAL INDUSTRIES LIMITED, INC have committed violations of the Violations of the International Emergency Economic Powers Act (IEEPA), Title 50, United States Code, Sections 1702 and 1705, and the Export Administration Regulations (EAR), Title 15, Code of Federal Regulations, Sections 736.2 and 764.2, by engaging in business activities involving the export of controlled items in violation of the Order of Debarment issued by the United States Department of Commerce, Bureau of Industry and Security against UNIVERSAL INDUSTRIES LIMITED, INC |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☐ Continued on the attached sheet.

_____
Complainant's signature

Caleb D. King, III, Special Agent D.C.I.S.
Printed name and title

Sworn to before me and signed in my presence.

Date:  8-12-14

_____
Judge's signature

City and state:  West Palm Beach, Florida     Dave Lee Brannon, United States Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF
## A CRIMINAL COMPLAINT

I, Special Agent Caleb King being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a Criminal Complaint for the arrest of Russell Henderson Marshall and Universal Industries Limited Inc. (Universal Industries) for violations of the International Emergency Economic Powers Act (IEEPA), Title 50, United States Code, Sections 1701 et.seq,, and the Export Administration Regulations (EAR), Title 15, Code of Federal Regulations, Sections 730-774.

2. I am a Special Agent with the United States Department of Defense, Defense Criminal Investigative Service (DCIS) and have been since August 28, 2012 and am currently assigned to the DCIS Fort Lauderdale Resident Agency. Prior to my employment with DCIS, I served as a Special Agent with the United States Army Criminal Investigation Division Command (USACIDC) from August 2010 to August 2012; in which I spent the majority of my time investigating major thefts of U.S. Government property and the illicit flow of Department of Defense contract funds in Afghanistan. I was also a law enforcement officer in Volusia County Florida for three years and a counterintelligence agent for the U.S. Marine Corps for four years. I am a graduate of numerous law enforcement related courses including USACIDC's Special Agent Basic Course and the DCIS Special Agent Basic Course.

3. In the course of my law enforcement career, I have completed various classes on fraud related crimes and participated in the investigation of such offenses. I have also worked with many senior agents and investigators who have mentored and trained me in the investigation of fraud schemes. Based upon this training and experience, I have become familiar with the

complex nature by which procurement fraud and violations of the export laws of the United States are carried out.

4. I am currently assigned to investigate a matter involving the sale of counterfeit aircraft parts to the Canadian Air Force, as well as the illegal export of military technology involving RUSSELL HENDERSON MARSHALL of UNIVERSAL INDUSTRIES LIMITED, INC as well as his associates and associated companies. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses along with information produced pursuant to the issuance of federal grand jury subpoenas and the examination of discarded trash by the targets of this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the arrest of RUSSELL HENDERSON MARSHALL and UNIVERSAL INDUSTRIES LIMITED, INC., and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit there is probable cause to believe that violations of the International Emergency Economic Powers Act (IEEPA), Title 50, United States Code, Sections 1702 and 1705, and the Export Administration Regulations (EAR), Title 15, Code of Federal Regulations, Sections 736.2 and 764.2., have been committed by RUSSELL HENDERSON MARSHALL, and UNIVERSAL INDUSTRIES LIMITED, INC.

## STATUTE AND REGULATIONS

6. The export of "commerce controlled" items are regulated by the United States Department of Commerce (DOC). Under the International Emergency Economic Powers Act (IEEPA), Title 50, United States Code, Sections 1701 et.seq., the President of the United States was granted the authority to deal with unusual and extraordinary threats to the national security,

foreign policy and economy of the United States. Under IEEPA, the president could declare a national emergency through Executive Orders that had the full force and effect of law.

7.      On August 17, 2001, under the authority of IEEPA, the President issued Executive Order 1322, which declared a national emergency with respect to the unrestricted access of foreign parties to United States goods and technologies and extended the Export Administration Regulations ("EAR"), Title 15, Code of Federal Regulations, Sections 730-774. Through the EAR, the DOC imposed license or other requirements before an item subject to the EAR could be lawfully exported from the United States or lawfully re-exported from another country. These items were included on the commerce control list ("CCL), published at Title 15, Code of Federal Regulations, Section 774, Supp.1. Items on the CCL were categorized by Export Control Classification Number ("ECCN"), which denoted the applicable export controls. The President issued annual Executive Notices extending the national emergency declared in Executive Order 1322 from the time period covered by that Executive Order through the time covered by this investigation.

8.      Pursuant to its authority under IEEPA, the DOC reviewed and controlled the export of certain goods and technology from the United States to foreign countries. In particular, the DOC placed restrictions on the export of goods and technology that it determined could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. Under IEEPA and the EAR, it is a crime to knowingly engage in conduct which is prohibited under any order issued under the EAR; to cause, aid or abet, counsel command, induce, procure or permit the doing of any act prohibited by the EAR or any order issued under the EAR; to conspire to bring about of do any act that constitutes a violation of the EAR; or to take any action that is prohibited by a denial

order, in violation of Title 50, United States Code, Section 1705 and Title 15, Code of Federal Regulations, Sections 764.2 and 746.3.

## PROBABLE CAUSE

9.  This investigation was initiated based on a Department of Defense (DoD) Hotline Complaint dated November 15, 2012 in which David LABRECQUE, President of JDS International, Noblesville, Indiana, alleged his company had purchased eight parts (Part number 6029T44G01) for a J85 military aircraft engine from UNIVERSAL INDUSTRIES LIMITED, INC. of 3050 SW 14th Place Unit 3, Boynton Beach, Florida in 2011 at an agreed upon price of $25,920.00. The end user of these parts was the Canadian Air Force for their F-5 fighter aircraft. The parts were presented by UNIVERSAL INDUSTRIES LIMITED, INC. as being manufactured in the U.S. compliant with the Defense Federal Acquisition Regulations, to include the Commercial and Government Entity Code (CAGE code) of the manufacturer stamped on the parts. RUSSELL MARSHALL assured employees of JDS the parts were manufactured by a company approved to do so by General Electric. JDS received the first part on this order from Universal Industries on July 13, 2011. JDS received the remaining seven parts on this order from Universal Industries on November 10, 2011, and ultimately exported them to Magellan Aerospace of Ontario, Canada for sale to the Canadian Air Force. UNIVERSAL INDUSTRIES LIMITED, INC. provided JDS with two letters signed by RUSSELL MARSHALL which states the parts sent in both shipments were manufactured "in compliance with the drawings and all applicable specifications. These parts are manufactured in compliance with the U.S. Government DFARS Requirements." JDS made an initial payment to UNIVERSAL INDUSTRIES LIMITED, INC. for these parts of $16,200.00 in the form of a check which was

mailed to UNIVERSAL INDUSTRIES LIMITED, INC around October 10, 2011 and ultimately deposited into UNIVERSAL INDUSTRIES LIMITED, INC's SunTrust Bank Account.

10. Magellan Aerospace rejected all of the parts for improper markings as the manufacture's CAGE code was not stamped on the parts as required in the drawings. When asked by JDS to provided traceability paperwork for the J85 parts, RUSSELL MARSHALL refused to do so but instead provided a series of metal reports by Huntington Alloys Corporation of Huntington, West Virginia and Haynes International of Kokomo, Indiana. These metal test reports relate to sheets of metal alloys which were sold to Aero Win Technology and Rolled Alloys International, respectively. An internet search of "Aero Win Technology" results in a website www.aerowin.com; in which Aero Win Technology is identified as a Taiwanese Aviation parts supplier. Rolled Alloys International was able to locate records for one of the metal reports submitted to JDS by MARSHALL which related to a shipment of alloy that was exported to Aerowin Technology of Taiwan with a listed end use of 'electric generator.' There are three U.S. companies who have manufactured this part under exclusive license with General Electric; all three of these companies have no record of any such part being sold to UNIVERSAL INDUSTRIES LIMITED, INC, or RUSSELL MARSHALL.

11. While investigating the complaint by JDS, your affiant learned that on August 19, 2011, RUSSELL H. MARSHALL was sentenced to three years of probation by Judge Marra in the Southern District of Florida for mis-labeling a package of J85 engine blades as commercial parts valued at $2,000 when he knew the package contained military parts valued over $105,000 destined for Singapore in violation of Title 18, United States Code, Section 1001, and on August 19, 2011, UNIVERSAL INDUSTRIES LIMITED, INC. was sentenced to one year of probation by Judge Marra in the Southern District of Florida for attempting to ship 200 J85 engine blades

without obtaining a license from the Department of State in violation of the Arms Export Control Act, Title 22, U.S.C. §§ 2778(b)(2) and (c).

12. As a result of this sentencing, UNIVERSAL INDUSTRIES LIMITED, INC. was banned from exporting military use items (Licenses issued by the U.S. Department of State) until August 19, 2012 and dual use items (Licenses issued by the U.S. Department of Commerce) until August 19, 2012.

13. The decision made by the Department of Commerce as published in the Federal Register Volume 77, Number 151 (Monday, August 6, 2012) provides that:

Until August 19, 2014, UNIVERSAL INDUSTRIES LIMITED, INC., with a last known address of 3050 S.W. 14th Place, Unite 3, Boynton Beach, Florida, when acting on behalf of Universal, its successors or assigns, agents or employees, ("the Denied Person") may not, directly or indirectly, participate in any way in any transaction involving any commodity, software or technology exported or to be exported from the United States that is subject to the Regulation, including carrying on negotiations concerning, or ordering, buying, receiving, using, selling, delivering, storing, disposing of, forwarding, financing, or otherwise servicing in any way, any transaction involving any item exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations; benefit in any way from any transaction involving any item exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations. The order further provided that no person may, directly or indirectly take any action that facilitates the acquisition, or attempted acquisition by the Denied Person of the ownership, possession, or control of

any item subject to the Regulations that has been or will be exported from the United States.

14. DCIS Agents conducted a trash pull from the dumpster located on the northeast corner of the parking area behind UNIVERSAL INDUSTRIES LIMITED, INC. of 3050 SW 14th Place Unit 3, Boynton Beach, Florida on November 30, 2012. On the top of the dumpster were a variety of documents in plain view which clearly showed markings indicating they were discarded by UNIVERSAL INDUSTRIES. Various documents were collected including printed emails and requests for quotes suggesting RUSSELL HENDERSON MARSHALL and UNIVERSAL INDUSTRIES LIMITED, INC. are engaged in correspondence related to the export of dual use, and military use aircraft parts to countries such as: Romania, Thailand, United Kingdom, Australia, New Zealand, Germany, Canada, United Arab Emirates, and Spain.

15. DCIS Agents conducted a subsequent trash pull from the same dumpster on December 10, 2012. A handwritten document was recovered entitled "Things to do before March 15, 2013, AMVETEC" which contains a list of items such as 1) FL Tax ID number, 5) Confirm names (Joe, Russ, Frank) do not show up on FL Registration if they do change names to wife's maiden names. Documents were also recovered indicating UNIVERSAL INDUSTRIES is involved in exporting military aircraft parts for the F-16 aircraft for the Indonesian Air Force.

16. On February 25, 2013, your affiant coordinated with U.S. Probation Officer Ann Roman, who supervises MARSHALL. Officer Roman reported she visited MARSHALL at his place of business, 3050 S.W. 14th Place Unit 3, Boynton Beach, FL on February 22, 2013, and inquired if he was complying with the terms of his probation. MARSHALL told U.S. Probation Officer Roman that he was complying with the terms of his probation and stated he was creating a new company called Amvetec because UNIVERSAL INDUSTRIES has a negative image in the

aircraft parts industry. MARSHALL stated Amvetec was going to deal in medical supplies. MARSHALL also stated he was not exporting any items. Christina VASQUEZ, UNIVERSAL INDUSTRIES Office Manager, provided Officer Roman with copies of request for quotations, purchase orders and customer order receipts documents for aircraft parts that Avanti Aerospace of Canada requested from Universal Industries. Christina VASQUEZ also provided Officer Roman with a purchase order and quotation for a temperature sensor Part Number 4034T94P02, [National Stock Number (NSN): 6685-00-208-2898] for Aeromax Industries located in California, who is ultimately shipping the item to the Royal Thai Air Force.

17. On April 27, 2013, your affiant pulled trash from the same dumpster located in the rear of Universal Industries. Your affiant recognized documents spread across the top of the dumpster as they had markings for Universal Industries. Some of the documents recovered are described as follows:

   a. A torn email dated February 19, 2013 from David (david@kamtech.co.il) to sales@univesalindus.com which is regarding a quote for a sensor, part number 4034T (the rest of the part number is torn). David says "we will supply our own c of c tracing material." Internet research of the abbreviation "il" indicates this is the country abbreviation for Israel.

   b. A hand written 'post it note' saying "waiting for reply from Kamtech."

   c. An email dated March 3, 2013 from Suriyati Othman (suriyaty.othman@fj.com.my) of FJ Global Solution of Selangor Malaysia, to sales@univesalindus.com which is a request for quotes for 2 canopy actuators (NSN: 1680-01-148-4167); 2 RCVV (NSN: 2995-01-206-7995; 1 fuel flow proportioner (NSN: 2915-01-041-4481), and one augmenter fuel control (part

  number 441422). The email says the end user is the Indonesian Air Force for F-16 aircraft. Handwriting on the printout says "Source Falcon 3/5."

  d. A torn piece of paper with a handwritten note saying "change the information on our cover sheets (email) so universal information does not come up. Please Check"

  e. Pieces of mail indicating the use of a freight forwarder were also recovered.

18. A review of the documentation obtained by Probation Officer Roman revealed RUSSELL HENDERSON MARSHALL and UNIVERSAL INDUSTRIES LIMITED INC., were engaged in negotiations to provide a temperature transmitter Part Number 4034T94P02, (NSN: 6685-00-208-2898) for Aeromax Industries located in California, which was to be shipped to Thailand by Aeromax Industries for the Royal Thai Air Force. An email recovered from discarded trash behind UNIVERSAL INDUSTRIES LIMITED, INC's location in Boynton Beach, Florida dated November 19, 2012 advised that the temperature transmitter was for the Royal Thai Air Force and the shipping destination was Thailand. This email contained a handwritten notation, "Kamtech System "$3,250". On November 20, 2012. Universal Industries Limited, Inc. issued a quotation to Aeromax Industries, Inc., for the sale and delivery of three (3) temperature transmitters, Part Number 4034T94P02, (NSN): 6685-00-208-2898) for a price of $12,675.00.

19. On February 13, 2013, Aeromax Industries Inc., issued purchase order number 20234374 to UNIVERSAL INDUSTRIES LIMITED, INC., attention RUSSELL MARSAHLL for the purchase of three (3) temperature transmitters, Part Number 4034T94P02, NSN: 6685-00-208-2898] for a price of $12,828.00 which described the ultimate destination as Thailand and the ultimate user as the Royal Thai Air Force.

9

20.     Your affiant obtained documentation from Aeromax Industries Inc. which showed that: On February 8, 2013, RUSSELL MARSHALL (UNIVERSAL INDUSTRIES LIMITED INC., Sales Department) sent an email to Aeromax industries Inc., advising that the best price they could offer for the temperature transmitters was $4276.30 each. On July 16, 2013, Aeromax sent an email to RUSSELL MARSHALL inquiring about the status of the delivery of the temperature transmitters under purchase order number 20234374 as it was overdue. On October 21, 2013, Aeromax Industries Inc. cancelled the order from RUSSELL MARSHALL and UNIVERSAL INDUSTRIES LIMITED INC., because they learned that UNIVERSAL INDUSTRIES LIMITED INC., had been debarred by the United States Department of State and that UNIVERSAL INDUSTRIES INC., could not sell any parts for export.

21.     Your affiant obtained a license determination from the United States Department of Commerce, Bureau of Industry and Security, which shows that Part Number 4034T94P02, Transmitter, Temperature Electric Resistance- NSN 6685-00-208-2898 is a controlled item under ECCN 9A619.x on the CCL for anti-terrorism, national security reasons and regional stability reasons, and required a DOC license for export to Thailand. Therefore, due to the debarment of UNIVERSAL INDUSTRIES LIMITED, INC, neither UNIVERSAL INDUSTRIES LIMITED, INC, nor RUSSELL HENDERSON MARSHALL, while acting on behalf of UNIVERSAL INDUSTRIES LIMITED, INC, could be involved in any transaction for the export of the temperature transmitter to Thailand.

22.     Records maintained by the Florida Department of State, Division of Corporations show that RUSSELL HENDERSON MARSALL is the Vice President of UNIVERSAL INDUSTRIES LIMITED, INC and a manager of AMVETEC SALES, LLC. As of July 1, 2013, UNIVERSAL

INDUSTRIES LIMITED, INC and AMVETEC SALES INC had moved to 3361 Belvedere Road Suite #A, West Palm Beach, FL 33406. DCIS has conducted surveillance of this location.

23.     RUSSELL MARSHALL provided a deposition under penalty of perjury on October 23, 2013 in Boca Raton, Florida pursuant to a law suit against UNIVERSAL INDUSTRIES LIMITED, INC by JDS concerning the J85 parts.  During this deposition RUSSELL MARSHALL acknowledged he was a director of UNIVERSAL INDUSTRIES LIMITED and acknowledged that he was aware that UNIVERSAL INDUSTRIES LIMITED, Inc. could not sell items which were to be exported because it was debarred and had about one more year left on the debarment.

## CONCLUSION

24.     Based on my training and experience and the facts as set forth in this affidavit there is probable cause to believe that violations of the International Emergency Economic Powers Act (IEEPA), Title 50, United States Code, Sections 1702 and 1705, and the Export Administration Regulations (EAR), Title 15, Code of Federal Regulations, Sections 736.2 and 764.2, have been committed by RUSSELL HENDERSON MARSHALL, and UNIVERSAL INDUSTRIES LIMITED, INC. by engaging in business activities involving the export of controlled items in violation of the Order of Debarment issued by the United States Department of Commerce, Bureau of Industry and Security against UNIVERSAL INDUSTRIES LIMITED, INC

I request that the Court order that all papers in support of this application, including the affidavit, criminal complaint and arrest warrant, be sealed until the arrest of the first defendant named in the criminal complaint or further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the

investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation.

FURTHER YOUR AFFIANT SAYETH NOT

_____
Caleb D. King, III
Special Agent
Defense Criminal Investigative Service

Subscribed and sworn to before me on this ___12th___ day of August, 2014.

_____
DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

12